Good morning. Good morning. I'm Robert Gilmour with the law firm Stein-Mitchell on behalf of plaintiffs and appellants. I'd like to reserve three minutes of my time for rebuttal. Okay. This is a case about the largest pharmacy in the country, CVS, overcharging millions of patients for health-maintaining and life-saving prescription drugs by over $120 million. The district court's erroneous rulings denied plaintiffs in the class any remedy for those overcharges. I'm going to focus on the court's errors in granting CVS judgment. One, the district court disregarded the summary judgment standard, instead impermissibly weighing evidence and making credibility findings and factual determinations in CVS's favor, not the plaintiff's. This ignored the well-settled law of summary judgment and usurped the jury's role. Two, the district court focused on the wrong legal question. The court was preoccupied with whether the PBMs, the pharmacy industry middlemen, were deceived by CVS. But the claims here are whether CVS deceived individual patients, plaintiffs, and class members at the point of sale. And three, the district court erred in its contract analysis. The court found that the relevant terms in CVS's contracts with the PBMs were ambiguous, and that finding should have stopped summary judgment in its tracks, because plaintiffs in CVS had competing evidence on what the contracts meant. That required a jury to decide which side was right. Okay. Let me ask you this. The district court also narrowed the class, is that right? It did, Your Honor. From what was 11 to 4 or something? It did. So I kind of like to look at these things a little bit. After Walmart, that in terms of when you're looking at a class certification and you're looking at those issues, from your perspective, if you can tell me what the common question was. And then with all of these, it seemed that the district court then narrowed from 11 to 4 under typicality? That's correct. So I'm also curious under . . . I kind of know the answer, but I don't exactly know the answer. Since Walmart, how many of these . . . Typicality was more popular before Walmart, I think. And so I want to know what in terms of . . . You know, if you're looking at a class like this, what's the common question? Because obviously in Walmart they had a million people, or they had all these people, and it was discrimination about promotions, and within it there were so many different . . . There were people that didn't even apply for promotions. There were people that weren't qualified for things. Okay, here . . . What would be the common question that would be answered? And then in terms of . . . I know that the contracts aren't exactly the same, but how do you get past the typicality, even though the contracts are different? Is there a way to look at each . . . Is it really the same issue with the contracts? That's what I'm trying to understand. Sure. I think the core common question is whether CVS should have been submitting its HSP program prices as its usual and customary prices under all of the contracts with the PBMs, and then by not doing so and presenting false and inflated copayments to customers at the point of sale without telling them that they're essentially being denied the benefit of their insurance. So essentially your people, meaning I'm just whoever all those people are, you have people that don't have insurance and they pay a certain amount and they get a pretty good . . . the cash amount is pretty good. Then people that have insurance who are paying for insurance to have private insurance, so then CVS bills their insurance and is charging them higher copays from . . . So they're paying more than the people that don't have insurance, right? That's right. And our class is the people who are using insurance to make their purchases. Right. And so their complaint is they're having to pay a higher copay than the people that don't have insurance at all pay for the same drug? That's correct. And it's because of a standard feature that's common in the pharmacy industry, usual and customary pricing. A pharmacy submits a usual and customary price to a PBM or an insurance plan. That plan then adjudicates it using that usual and customary price, and it's called lower of UNC pricing. And what it means is the PBM or insurance plan will send back the copay, and under the agreements the copay is never to exceed the usual and customary price. So the way insurance works in effect is a person using insurance is never supposed to pay more than someone who isn't using insurance. What CVS did here, class-wide, was not submit its cash discount price, the HSP price, as its usual and customary price. That price fit the definition of usual and customary in each of the contracts at issue here. And we put forth evidence from the transaction data, internal CVS documents, plan documents describing, program documents describing this HSP price as a cash discount program, and all the UNC definitions, usual and customary price definitions, refer to cash prices inclusive of discounts. So CVS, and if CVS's evidence is to be credited, the PBMs jointly disregarded those contract terms. CVS didn't tell class customers about that, and therefore overcharged them. So CVS didn't make copayments that were in excess of the HSP price. Let me ask a question. Go ahead, Judge. You're on. Do the plaintiffs need to be third-party beneficiaries to bring any of their claims? The district court said that that wasn't relevant. We think that they do need to be and are third-party beneficiaries. Can that issue, is that a question of fact, and don't you have to look at the different state laws where the contracts were executed? Well, if you look at the, it involves a question of fact in that it needs to, it requires comparing the circumstances of the class as a whole, they are all patients using insurance, to the terms of these contracts. But the terms of the contracts are uniform. They all involve how are people using insurance, how are they paying for those prescription drug purchases. And so if you look at the usual and customary provisions in all these contracts, they evidence an intent to benefit these patients. In fact, they wouldn't exist without these patients. And the JADCO case from the Northern District of California is a good example. There it was actually looking at another pharmacy that wasn't even mentioned in, it was a PBM pharmacy agreement just like those here. And the court said, notwithstanding some boilerplate disclaimers, the law is clear that if you are, could specific provisions in the contracts intend to benefit these people, then they are third-party beneficiaries. So CVS has discontinued this now, am I correct?  Okay. So these individual people that were paying a higher copay, as a practical matter they're not probably going to get a ton of money each person, right? The individual damages for individual class members are relatively modest. I think this is kind of the classic case why you would have a class action. Because absent class treatment, individuals are unlikely to go in. They may have been overcharged 40, 50, some 100. So not insignificant amounts, but small amounts individually. In the aggregate, enormous. So if you prevail, well, if you're correct in answering the common question as you propose it, So is this a mechanism of how CVS can make money off the backs of the people that have insurance that maybe other pharmacies can't do? I mean, obviously there are not other pharmacies here, so they're not tagging along here. This is just a consumer lawsuit, correct? This is just a consumer lawsuit. I mean, there are other pharmacies, and the record I think has mentioned some, such as Kmart that have been hit with lawsuits, and there are others as well. There are other pharmacies that haven't engaged in the conduct that CVS has done. I think you were mentioning Walmart. So if there are other ones that don't do this, let's say, are they at a financial disadvantage to those that do this? I mean, is this a moneymaker for the pharmacies that engage in this conduct? Well, whether CVS was competing against companies like Walmart and Walgreens. Some do, allegedly, if you look at other lawsuits, engage in this activity, and some don't. CVS is an enormously profitable company. I mean, we cited cases that show how much money they were making by some internal studies, $500 million a year, by not reporting the HSB price as its usual and customary price. And if you look at the evidence, and kind of returning back to why the district court erred, we put forth evidence that the court itself said was relevant, internal documents, data, fact and expert witness testimony. And the court just looked at that, while admitted it was relevant, then decided it was inconsequential, thought that CVS's evidence was better. And that's classic usurpation of what the jury's role is. But is this a jury trial? Did you ask for a jury trial? We did. And I think all but one of the claims would be a jury trial. So really, we're talking on summary judgment, whether the district court can evaluate the evidence that you put before it or should send it to the jury. Is that your argument? That's exactly the argument, yes, Your Honor. Okay, so because it seemed to me I wanted to make sure what you were really saying, is there additional evidence that you would present over and above what you presented in summary judgment to the jury? I'm sure there is. But you're really not suggesting that you're going to present any more evidence. You're just suggesting the district court shouldn't have made the determination that they should have sent it to the jury to make it. I think that's fair, Your Honor, yes. And if you look at the evidence, and I take the point that Well, then, if that's really your situation, let's look at the expert opinion. On the expert opinion, the district court threw out the expert opinion, saying that there was no foundation for the expert opinion because the expert did not conduct a specific, and I'm quoting, investigation into insurers' and pharmacy benefit managers' understanding of the terms of their agreements, correct? Yes, Your Honor, that was And so what is my standard of review on this determination? Well, with respect to What is my standard of review? It's abuse of discretion with respect to the expert. All right, so on abuse of discretion, if the district court says that your expert should have conducted this kind of investigation before trying to give some expert testimony, why is that an abuse? It arises from the same error that infects its summary judgment erroneous ruling. Focusing Well, I can understand on the I can understand what you're arguing on the summary judgment because you're saying it made a determinant as to what's consequential and what isn't. But now we're making, if you will, a Daubert determination on an expert witness. We're not looking at what will be the ultimate result. We're making a Daubert determination. And the district court gave a very good reason why it was excluding that particular expert. Now you tell me, why is that an abuse? Well, we submit that it's not a very good reason. The court essentially said, we want you to do another analysis that you didn't do. He wasn't purporting to say, I know what the PBM's views are, and based on the PBM's views, my opinion is X. He was going on, I've analyzed data, and I've analyzed conduct that I see from the transaction analysis, and I've offered my expert opinions as to why these opinions should be, these prices, HSB prices. Well, it seems to me that what you're saying is the standard that was imposed was not really as to the admissibility, but as to the weight, and it was more an impeachment approach to it. I think that's exactly right, Your Honor. Which, as opposed to, but if it really was to, if the court found it to be unreliable under the Daubert standard, then that's more difficult for you. And I think the court couched its ruling in Daubert language, but it really was engaging in weighing evidence. It comes back to the same error with summary judgment. The court said, the PBMs say what CVS did is okay, and so I'm not going to credit your expert or, frankly, your fact evidence. And so it describes Professor Hayes' opinions as unreliable, but really it just said, you know, I think there's other evidence that outweighs his evidence, and so that was the basis for course. And then, as I understand, your expert was also giving expert testimony as to whether this was a true membership plan, right? He was, and again, based on the data analysis. He looked at, CVS argued you could only get these prices if you were a member, and he looked at CVS. Did the district court throw out his testimony as to that evidence? He did. The court did. Again, weighing competing evidence. He analyzed the data, and he said he found this price that CVS is arguing is exclusive to members. Actually, CVS is charging it to many people who weren't members. Now, CVS had other witnesses who tried to offer an explanation. That's competing evidence, and the court just picked CVS's side instead of ours. Those are kind of the classic weight of evidence credibility determinations that are for a jury, not a court. Did Varlag ever say that what Hay said had no foundation as it related to the true membership plan? I don't believe that Mr. Varlag said that, and if he did, that itself would be without foundation, because Professor Hay looked at objective criteria. What does the CVS data, what do the numbers show? The numbers show that CVS was charging, giving this price to nonmembers as well as members, which we said further undermines this notion that it was an exclusive price that could be carved out from the usual and customary reporting obligations. Okay. I see I'm well over. Actually, you're over. We'll decide if we need any rebuttal after we hear from the other side, okay? Thank you, Your Honors. Thank you. Still good morning. Yes. Thank you, Your Honor. May it please the Court, Grant Geierman from Williams & Connolly on behalf of CVS Pharmacy, Inc. The district court correctly granted summary judgment because there was no genuine dispute of material fact that CVS made no misrepresentation of its usual and customary price as that term was defined in the CVS contracts with the pharmacy benefit managers at issue. Do we have to agree with the way you framed the question in order for you to prevail? Because the appellants framed the question differently. And if the question is whether CVS properly excluded its health savings program from the UNC price, why do we care about whether or not the PBMs knew that the health saving program rates were included in the UNC price? So it seems to me how we frame the question is important to the resolution. I'm not sure I would think those two different ways of framing the question are really all that different. The alleged false statement in this case was the price that CVS Pharmacy transmitted to the PBM during the process of adjudicating the insured putative class member's claims. But they excluded the health savings program from the UNC price. So doesn't whether that was appropriate or not, isn't that crucial to this lawsuit? Unbelievably crucial to this question. And because usual and customary is a defined term in the CVS to PBM agreement, whether CVS was supposed to report health savings pass as its usual and customary price is to say is health savings pass within the definition in those contracts of usual and customary price. And it was on that precise point that the record contained evidence only in CVS's favor. There was testimony from the five biggest pharmacy benefit managers in the United States. They were asked, here's the contract with CVS. Here's the definition of usual and customary price. Is health savings pass within that definition of usual and customary price? Uniformly, the answer was no. Therefore, the testimony was all that CVS was not obliged to report its health savings pass price as its usual and customary price under those contracts. And critically, that is the nature of the misrepresentation that is at the foundation of all four complaints that the plaintiffs in this case filed. They filed one original and three amended. And every single time, the alleged misrepresentation was this, are supposedly submitting the wrong price as usual and customary. So why did you discontinue the program? Why did we discontinue it? The program was very small. It wasn't making us any money. And these programs were no longer a hot topic by 2016 when CVS discontinued it. Back in 2006, Walmart shocked the industry by lowering its price to $4. And over the course of several years, pretty much every company that had some form of pharmacy operations responded in some fashion. CVS was late to the game in that fashion. We didn't launch health savings pass until November of 2008. But whereas CVS felt I need to have some sort of offering to be a player in 2008, that same need was not involved by 2016. Let me ask you the question I asked plaintiff's counsel. Do the plaintiffs need to be third-party beneficiaries under any of their claims? And why shouldn't we send it back to the district court? Sure. To look at that question. Sure. Well, first of all, counsel's answer to Your Honor's question, I think. No, I want to know what you think. Okay. Well, I don't think you don't have to get to the third-party beneficiary question to affirm summary judgment, because the question is what did the parties to the contract between CVS and the PBMs understand the usual and customary definition to mean as applied to membership programs? And third-party beneficiaries came up in the district court because when we pointed out to Judge Gonzales-Rogers that the only evidence from the actual parties to the agreement is all in one way, they came up and said, well, we are actually third-party beneficiaries, and so our opinion counts. There are actually, of the five PBM contracts at issue, four of them contain and express no third-party beneficiary clause in them. And they explicitly say insured members or eligible members, which is referring to consumers with prescription insurance, aren't included. So they have an enormous hurdle to overcome were they to say that their claim has to, requires them to be third-party beneficiaries because they have to get past that no third-party beneficiary clause. And as Your Honor pointed out, the exact legal test that one applies to determine if you're a third-party beneficiary varies state to state. But in all of the four states that this case is really about now, it's an extremely high threshold. So how is the UNC price determined? Is it a set industry-wide price or does it differ according to each contract that CVS has with each PBM? So it's a defined term in each contract. At one point in time, CVS had different usual and customary or different cash prices that, depending on the wording of the contract, required them to submit what was called the senior citizen retail price versus the regular retail price. And so in that context, depending on what the language of the particular CVS to PBM agreement was, different prices were submitted. At this point, CVS has a single retail price and all of the contracts require that submission of that same price. Although, when one is measuring whether some other price should have been submitted, it's undisputed between the parties that the definition that controls is the one that's in the contract, which is why when the plaintiffs came forward with evidence, they said, that should cause them to survive summary judgment. Judge Gonzales-Rogers identified what that evidence was. She explained in bullet points what the evidence was. But she ultimately ruled it created no genuine dispute of material fact because the evidence wasn't even about the five PBM definitions that were at issue. But she used words like, well, I don't, it's inconsequential. I don't think it's as good as the other side or whatever. That sure sounds like way in the evidence. I think when you look and you read Judge Gonzales-Rogers' 31-page opinion and you look in context for the way in which she's using those words, it's undeniable that she's applying the summary judgment standards she's applied over and over, and that she was saying that this evidence is not actually responsive to the testimony. She said it was relevant. She said the evidence was relevant. And looking at the context is what a jury does, at the context of the evidence. I'm having a hard time. I looked at the decision, and I preside over trials all the time, and it just looked like she's weighing the evidence there. I mean, you could argue whether one side is stronger than the other, but that's really for a jury to resolve. Well, Your Honor, I submit that there are ten pieces of evidence that the plaintiff has designated in the excerpts of record here. None of them are about the five PBM definitions that ultimately this case came down to. None say that health savings pass is, in fact, the usual and customary price under those definitions. It sounds like a good closing argument for a jury. No. I think when the ultimate question for the district court is, is there a genuine dispute of material fact, when you don't have any evidence that's actually about the five agreements that are at issue, you're entirely within your realm to say that there has been no genuine dispute of material fact. I mean, they'll be able to put up e-mails and make arguments all the time, but they had the burden here. They needed to go out and they needed to secure testimony. Let's just talk about that. As I understand it, the plaintiffs put forth a series of internal communications among the CVS employees. These communications demonstrated that these employees had concerns over whether the HSPC pricing should be reported at the UNC price, and they were worried that the insurance companies would start demanding that that be the price. Now, that seems to me to be the effect of what they put forward, right? That is largely what they put forward. Now, why is that not relevant? I mean, my worry is, on the one hand, I got CVS. They had affidavit testimony from the insurance company employees. They have also other affidavit testimony of their own, but my worry is if I've got affidavit testimony from the insurance company employees that say, shouldn't HS, I call it HSPC price, I don't know what you call it, shouldn't be in the UNC price. And then I got these other series of internal communications. I don't know why that's irrelevant if it relates to the same insurance companies. So, of the ten pieces of evidence I was referring to that have been designated Which are the series of the internal communications. Five of the ten are certain analyses that were run before Health Savings Pass was finalized and before it was implemented. At best, those are saying Now, that goes to the weight, not to the admissibility. I think when the question is, is there a genuine dispute of material facts? All I'm trying to do is give you full credit because I have, this is a summary judgment. I'm trying to say, why is that not enough? Right. So, as Judge Gonzales-Rogers explicitly noted after identifying those pieces of evidence, to say that there is a possibility that my contract counterparty at the PBM is going to take the position that Health Savings Pass is within the definition of usual and customary price is something that is qualitatively different than a document that says we actually believe this is our Health Savings Pass price and so we need to submit it. So, you're saying to me that in order for these third parties to bring this lawsuit, they needed to have at least one of those contract parties who said, you should have done it differently. They can't have enough to say, well, CVS worried about it. I agree, Your Honor. You can't say enough that, well, CVS worries that it's going to happen. Someday insurance companies may fight about this. That's not enough? I am saying that, Your Honor. I mean, there are, the plaintiffs have the burden here. They didn't come forward with a single PBM or third party payer. Not one that actually believed that Health Savings Pass was within their definition of usual and customary. And we talked a lot about the five PBMs today, but there was testimony from a sixth entity, which was Aetna, one of the largest insurers in the country. Before you go on there, is there any reason that the insurance companies would have not to challenge? In other words, are they biased? You mean a financial interest? Well, aren't you and Aetna trying to merge right now and DOJ is giving you a hard time about it? They are, Your Honor. I know. I'm not supposed to go outside the record. But I think what he's saying is, is there any reason that they might want to curry favor with CVS? My worry is I've got two different absolutely contrary things. The only thing I see the district court saying is all of this contrary information coming that's absolutely valuable, really doesn't have any part of it because they weren't contracting parties. They were only employees of the contracting party who were worried. And I'm saying to myself, so that says that the district court is saying that these people who may have objected somehow had a bias and would not have objected. Right. And to respond to the bias point, number one, PBMs are financially incented to pay pharmacies as little as possible. When they pay pharmacies less, they keep more. So the fact that the contract counterparty is in agreement with CVS reflects a conceptual meeting of the minds that this type of program where you had to pay a fee to join, you had to waive certain HIPAA rights to join, you agreed to certain terms and conditions, that took them outside of the realm of what these contracting parties understood to be a usual and customary choice. But, see, I think what the consumer would say is, yeah, they're all against me to make me pay more than the cash payer does. So when PBMs go out and try to win clients like insurance companies and employer groups, one of their selling points is, hey, you should retain me as your PBM because I can negotiate lower prices for you. And so it would be antithetical to sort of the ultimate selling point of a PBM if they were to say, look the other way and allow prices to rise. That's just not, that wouldn't be their business model. Well, you know that President Trump in October signed the Patients' Right to Know Drug Prices Act, right? And in the act it says that an act, it's an act that is designed to ensure that health insurers, health insurance and group health plans do not prohibit pharmacy providers from providing certain information to enrollees. And in general, a group health plan or health insurance provider shall ensure that any entity that provides pharmacy benefit management services does not restrict directly or indirectly a pharmacy from informing an enrollee of any differential between the enrollee's out-of-pocket costs under the plan or coverage with respect to acquisition of the drug and the amount an individual would pay for an acquisition of the drug without insuring any health plan. It seems to me that this is, the conduct in this case is the impetus for a law like this. And some of the articles that came out, and again, I'm not supposed to go outside the record like this, but some of the articles specifically reference that say that although PBMs are supposed to negotiate drug prices between manufacturers and pharmacists and health insurance companies, they've come under increasing criticism. And that's why Congress passed this law. So is this law the, I mean, is this the kind of conduct that's the impetus for this law? The defendant in this case is CVS Pharmacy. CVS Pharmacy is not a PBM. That legislation sounds directed at restricting access to the PBM. Oh, no, I didn't skip the first part. I didn't, I just, the whole point is to not restrict pharmacies from disclosing. And I will, and pharmacies and PBMs are very sophisticated, arm's length negotiating parties here. They fight on a lot of things. There's lots of money involved in these transactions. And so if a pharmacy had its way, I'm sure there would be a ton of restrictions that PBMs try to place on the pharmacy that wouldn't be in play. But, again, the. So if a consumer who had insurance, if he or she went in, submitted their prescription previous to this law, the pharmacy couldn't tell them, the pharmacists couldn't tell them, you know what, the HSP price is the lower price, and if you pay $10 for this, you'll get all this. That's the impact of this law. I don't know that to be true as to how life was before this law, Your Honor. I haven't looked at the five PBM contracts to specifically see whether they were prohibited or not. HSP was a public program in that it was on our website. There were flyers at the pharmacy. And so if someone with insurance came in and they paid a $15 copay and the HSP price was $9.99, there was nothing hidden from them that their copayment was more than the HSP price. All right. I think we're going a little off on this. I think the one. So we've taken you over time. Did either of you have any questions? I had one question, but it's a lot over time. Oh, no, you can ask it. I mean, the only thing that worries me is all this goes to really the expert's opinion. It would go to the summary judgment except the expert's opinion about the membership plan, whether this is a true membership plan. Because even if all you say is right about the statistics, about what the affidavits said the plaintiffs put forward, if the plaintiffs can come up with an expert which says this isn't a true membership plan, then you should have included it anyway. So I guess I'm having a tough time why I didn't see anything in there that said Barling's data was any better than Hayes. And Barling never said that Hayes had no foundation in what Hayes had suggested. Thank you for that question. There were two bases for Dr. Hayes saying my calculations show it's not a true membership program. One, the statement that the health savings past price was supposedly provided to non-HSP members. Okay. At page 18 of the excerpts of record, Judge Gonzales-Rogers noted that Brett Barlag, our own data expert, went in and said, okay, on those transactions where $9.99 was charged to a non-HSP member, did CVS report $9.99 as its UNC price to third-party payers? Answer, yes. So it's to ratchet up your language in the expert report to the highest level of generality to say the HSP price was charged to non-HSP members, because Mr. Barlag provided the further explanation that said, yeah, sometimes $9.99 happened to be CVS's retail price, and 99.8 percent of the time it was submitted. So Judge Gonzales-Rogers didn't choose CVS's expert over the plaintiff's expert. What she did was get into the details of the calculations and say, Dr. Hayes's statement is misleading when you consider this additional piece of analysis. This isn't an example of CVS not having a true membership program. Okay. I'm going to. Okay. And then I didn't, because we've gone so much over. I'm going to give you two minutes on rebuttal, or if or I'll just get you up here if the panel has any questions, just because that's — I know that you're all very zealous of your own time, but it's really about us having our questions answered. But go ahead. Thank you, Your Honor. Did either of you have any questions? No. Okay. Then use your two. All right. If you want to. CVS owns Caremark, which is the largest PBM at issue, and one of the PBMs at issue in the classes. So there's an incentive right there. There's also evidence that PBMs have incentives, and I think this is publicly available, again, you know, cautioning about going outside the record. But it's obvious there's reasons why PBMs don't want usual and customary pricing, because they say, well, we're able to get this better pricing. And if a pharmacy submits a price that is low as its own cash pricing, that sort of undermines the rationale for PBMs. The discussion on Mr. Barlag, the competing experts, Mr. Barlag, Mr. Hay, I think encapsulates the problems with this case, because you have CVS's expert trying to explain away our expert's analysis, and that's really for the jury to decide which analysis is more persuasive. It's not a gatekeeping function under Dawbert. Finally, we've talked about the evidence, and I'd suggest that, Your Honors, as you go back and look at this case, if you look at the document, it's in the record beginning at ER 580, and the specific page in the record is 593. It's one of these internal presentations we're talking about. Counsel described all those as predating the launch of the program. That's not true. This is a presentation from 2010. That's two years after the program has been in place. And CVS talks about passing the HSB pricing on would lead to private payers demanding the same price. It talks about, in that presentation, HSB becomes UNC, and it calculates if we do that, it's going to cost us $500 million, because that's how much we're making each year. It shows there is evidence, competing evidence, on both sides as to whether CVS should have been reporting its HSB price as its usual and customary price. The Court disregarded that. That is for a jury to decide which side should prevail. Thank you. All right. Thank you both for your argument in this matter. This will stand submitted, and this Court is in recess until 9 a.m. tomorrow. Thank you. All rise. This Court for this session stands adjourned.
judges: Callahan, N.R. Smith, Olguin